**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
TAX ANALYSTS,                  )
                               )
        Plaintiff,             )
                               )
    v.                         )   Civil Action No. 04-1050 (EGS)
                               )
INTERNAL REVENUE SERVICE,      )
                               )
        Defendant.             )
_____)
```

**MEMORANDUM OPINION**

Plaintiff Tax Analysts, a nonprofit corporation dedicated to the publication and dissemination to the public of information concerning the tax laws of the United States, brings this action seeking disclosure of certain documents (known as "Chief Counsel advice memoranda" or "CCA") prepared by the Internal Revenue Service Office of Chief Counsel ("OCC") concerning cases pending in United States Tax Court.  Plaintiff's complaint stems from the Service's recent decision to withhold such documents in their entirety, in contrast to its prior policy of separating and disclosing the portions discussing general applications of the U.S. tax law (referred to by plaintiff as "agency working law"). *See* Compl. ¶ 12.  Plaintiff argues that the new policy violates the Internal Revenue Code's general rule, codified at 26 U.S.C. § 6110, requiring the text of IRS "written determinations" to be

1

open to public inspection.  *See* 26 U.S.C. § 6110(a).

Pending before the Court are the parties' cross-motions for summary judgment.  Upon careful consideration of the motions, the responses and replies thereto, as well as the governing statutory and case law, and an *in camera* inspection of the documents at issue in this case, the Court is persuaded that the documents are protected in full by the attorney work product doctrine, as incorporated by FOIA Exemption 5 and 26 U.S.C. § 6110.  Accordingly, the Court will **GRANT** defendant's motion for summary judgment, **DENY** plaintiff's motion, and order the Clerk to **DISMISS** plaintiff's complaint with prejudice.

## I.   BACKGROUND

Chief Counsel advice memoranda ("CCA") are documents prepared by attorneys in the IRS Office of Chief Counsel ("OCC") in response to requests from IRS field offices for guidance on legal interpretations and IRS policy with respect to provisions of the tax laws.[1]  In general, and subject to certain exceptions,

---

[1] The Internal Revenue Code defines "Chief Counsel advice" as:
> "written advice or instruction, under whatever name or designation, prepared by any national office component of the office of Chief Counsel which --
>> (i)  is issued to field or service center employees of the Service or regional or district employees of the Office of Chief Counsel; and
>> (ii) conveys
>>> (I)  any legal interpretation of a revenue provision;
>>> (II) any Internal Revenue Service or Office

the IRS is required to keep its "written determinations," including CCA, available for public inspection.[2]  *See* 26 U.S.C. § 6110.  The Code provides certain exemptions from disclosure, *see* U.S.C. § 6110(c), and specifically provides the Secretary with discretion to delete material from CCA in accordance with the exemptions available under the Freedom of Information Act ("FOIA")(5 U.S.C. § 552(b) and (c)).[3]  26 U.S.C. § 6110(i)(3).

Prior to July 2003, the IRS processed CCA for public dissemination in accordance with Chief Counsel Notice No. CC-2002-026 (May 16, 2002) (the "2002 Notice").  This guidance document instructed employees that they may withhold information protected by FOIA, including attorney work product, but

---

of Chief Counsel position or policy concerning a revenue provision; or
(III) any legal interpretation of State law, foreign law, or other Federal law relating to the assessment or collection of any liability under a revenue provision."
26 U.S.C. § 6110(i)(1)(A).

[2] The term "written determination" means a ruling, determination letter, technical advice memorandum, or Chief Counsel advice.  26 U.S.C. § 6110(b)(1)(A).

[3] FOIA Exemption 5, 5 U.S.C. § 552(b)(5), protects documents that would normally be privileged in the civil discovery context, including material protected by the attorney work product doctrine, the attorney-client privilege, and the deliberative process privilege. *See Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 616 (D.C. Cir. 1997) (citing *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 148-49 (1975)). The scope and proper application of the work product doctrine as embodied in Exemption 5 is one of the key issues in this case.

specifically noted that "the attorney work product doctrine in a CCA *does not ... include general discussions of the law*, including the application of those legal principles to the particular facts of the case that is the subject of the CCA." *Id.* at 9 (emphasis added).  Under this policy, the IRS would regularly separate and release "agency working law" from protected attorney work product when responding to requests for disclosure of docketed case CCA.  *See* Pl's. Opp'n at 3.

In July 2003, OCC changed its interpretation of the scope of the attorney work product doctrine as it applied to the dissemination of CCA.  *See* Chief Counsel Notice No. 2003-022 (July 1, 2003)(the "2003 Notice") (noting that attorney work product in CCA "may include general discussions of the law").[4]  In accordance with the new policy, the IRS began withholding CCA in their entirety whenever it determined that the documents were prepared with a "litigation predicate."[5]  *See* Tate Decl. ¶ 3.

Between September 16, 2003 and January 21, 2004, Tax Analysts filed four requests under 26 U.S.C. § 6110(i) & (f)(4),

---

[4] This change in policy was apparently prompted by a recent D.C. Circuit case which, coincidently, also involved plaintiff Tax Analysts.  *See* 2003 Notice at 2 (citing *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002)).  This case will be discussed in further detail at Section II(B).

[5] The IRS considers "litigation predicate" to mean that the subject matter addressed in a CCA is "either docketed in court, or, based on the totality of the facts, there is a reasonable anticipation of litigation."  *See* 2003 Notice at 7.

4

and alternatively under FOIA, for the texts of all CCA memos withheld from disclosure pursuant to the 2003 Chief Counsel Notice.  *See* Def's. Statement of Facts at 3.  The IRS identified five CCA responsive to plaintiff's request, reviewed each of the CCA for reasonably segregable nonexempt material, and ultimately decided to withhold each of the CCA in full pursuant to the work product doctrine, as incorporated by 26 U.S.C. § 6110(i)(3) and FOIA Exemption 5 (5 U.S.C. § 552(b)(5)).  *See* Tate Decl. ¶ 3 (noting that each CCA was "prepared during pending litigation that was docketed in the United States Tax Court, addressing a matter that is at issue in that litigation").  The IRS identified seven additional related documents -- five two-page "check sheets," one pertaining to each CCA, and two "harm memos," one each with respect to the CCA dated June 30 and July 1, 2003.[6]

---

[6] According to defendant, "check sheets are completed by Chief Counsel employees to ensure that each CCA is correctly processed for public inspection according to the requirements of IRC § 6110, as implemented by Chief Counsel Notice 2003-22.  With respect to the CCA at issue here, the check sheets identify each CCA and indicate that the CCA should be withheld in full from public inspection because it was written in the context of pending docketed litigation.  On the first page of each check sheet the Case Control (Taxpayer's) Name, Case Control Number, and (where applicable) the Taxpayer's mailing address have been withheld; the rest of the first page was released to plaintiff.  The second page of each check sheet was released in full to plaintiff."  Tate Decl. ¶ 5.
The two "harm memos" were written by the attorney who authored the CCA, and each "includes the name of the taxpayer and states that the CCA should be withheld in full because it was requested and issued in the context of pending litigation.  One of the two harm memos also includes the applicable Tax Court docket number.  The IRS is withholding the taxpayer name from

The agency withheld certain elements of "taxpayer identity" from each of these related documents pursuant to FOIA exemption 3 (5 U.S.C. § 552(b)(3)) in conjunction with IRC § 6103(a).

On June 25, 2004, following the completion of administrative proceedings, Tax Analysts filed a complaint in this Court seeking an order:

- under § 6110(f)(4)(A) requiring the IRS to open for public inspection, and cease to withhold from all CCA withheld in their entirety pursuant to Notice 2003-022, (a) discussions of the tax law generally, (b) applications of legal principles to particular facts, (c) legal interpretations of any revenue provision as "revenue provision" is defined in § 6110(i)(1)(B), (d) statements of any IRS or OCC position or policy concerning any such revenue provision, and (e) any legal interpretation of any state, foreign, or other federal law relating to taxation; and

- under 5 U.S.C. § 552(a)(4)(B) [FOIA] enjoining IRS from withholding from public disclosure (a) case control numbers, case control names, and taxpayer addresses from check sheets prepared for CCA withheld under Notice 2003-022 ["check sheets"]; and (b) memos discussing privilege(s) claimed with respect to, and harm that might result from disclosure of, CCA withheld from public disclosure pursuant to Notice 2003-022 ["harm memos"].

Compl. ¶¶ 33-34.

In December 2004, defendant submitted for the Court's *in camera* inspection unredacted copies of each withheld document. The parties' cross-motions for summary judgment are now pending.

**II.  DISCUSSION**

---

each memo, and the Tax Court docket number from the memo in which it appears." Tate Decl. ¶ 6.

**A.   FOIA and the Attorney Work Product Doctrine**

Although embedded in a complex provision of the Internal Revenue Code, this case is, at its heart, a dispute about the proper scope of the attorney work product doctrine.  The doctrine, first expressed by the Supreme Court in the case of *Hickman v. Taylor*, 329 U.S. 495 (1947), protects documents prepared in "contemplation of litigation," and "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980); *see Delaney, Migdail & Young v. Internal Revenue Service*, 826 F.2d 124, 126 (D.C. Cir. 1987) ("The work product privilege enables a lawyer to develop his mental impressions and legal theories without fear of having his adversaries rummage through them at leisure.").  This privilege, however, does not extend to each and every document generated by an attorney.  Rather, the key is whether or not the documents were prepared in anticipation of litigation.  *See, e.g., Jordan v. United States Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978).

> [T]he purpose of the privilege is to encourage effective legal representation within the framework of the adversary system by removing counsel's fears that his thoughts and information will be invaded by his adversary.  In other words, the privilege focuses on the integrity of the adversary trial process itself.... This focus on the integrity of the trial process is

7

>     reflected in the specific limitation of the privilege
>     to materials 'prepared in anticipation of litigation or
>     for trial.'

*Id.*

FOIA Exemption 5 incorporates the traditional attorney work product doctrine by exempting from the general rule of disclosure any documents "which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5).  *See Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 616 (D.C. Cir. 1997) (citing *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 148-49 (1975)).  FOIA, however, does not provide blanket protection for documents containing privileged material.  Rather, it requires the responding agency to disclose any reasonably segregable non-exempt portions of a record unless they are "inextricably intertwined" with the exempt portions.  5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999).

In this case, the IRS determined that the documents at issue are protected in full by the attorney work product doctrine because "[e]ach CCA was written, in its entirety, in the context of litigation."  Tate Decl. ¶ 4. Accordingly, defendant concluded that "no portion" of any of the five CCA at issue could be reasonably segregated for disclosure.  *See id.*  Plaintiff argues that this conclusion was improper and OCC should have segregated and released the portions of the CCA consisting of agency working

8

law from the portions withheld as attorney work product.  *See* Pl's. Opp'n at 25.  It is not completely clear whether plaintiff's position is that agency working law can *never* be withheld as attorney work product, or, alternatively, whether plaintiff is making a narrower argument that the agency working law at issue *in this case* does not meet the standards for protection under the attorney work product doctrine.  Each argument will be addressed in turn.

> **B.   Attorney Work Product and Agency Working Law in General -- "the *Guidance* Case"**

Any argument that agency working law is inherently separate and distinct from attorney work product and therefore must always be disclosed has been squarely foreclosed by the D.C. Circuit's opinion in *Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002) (the "*Guidance* case").  In the *Guidance* case, Tax Analysts sought full disclosure under FOIA of several categories of documents prepared by OCC, including intradivisional Technical Assistance memoranda ("TAs") prepared by Chief Counsel attorneys in preparation for trial and withheld in their entirety pursuant to FOIA Exemption 5.  As in this case, the parties disputed the scope of the attorney work product privilege.  Plaintiff argued before the district court that the privilege protects only the "mental impressions, conclusions, opinions, or legal theories of an attorney," or "factual materials prepared in anticipation of litigation," but not "agency working law, legal analysis and

conclusions." *See Tax Analysts v. IRS*, 152 F. Supp. 2d 1, 18 (D.D.C. 2001) ("*Guidance I*"). The district court rejected plaintiff's argument, holding that "as long as the eight TAs in dispute are documents that were prepared in anticipation of litigation or for trial, they can be withheld, *including any agency working law that they may contain*." *Id.* at 19 (emphasis added). The Court of Appeals affirmed the reasoning and conclusions of the district court on this point, holding that

> the District Court correctly determined that IRS need not segregate and release agency working law from TAs withheld in their entirety pursuant to the attorney work product privilege. Because the District Court's analysis and conclusions on these points are eminently sound, no further elaboration is necessary. We therefore affirm the District Court's judgment on these issues and adopt its reasoning and conclusions.

*Tax Analysts*, 294 F.3d at 76.

Plaintiff argues that the *Guidance* case does not control here because that case was decided solely under FOIA, and did not involve the application of IRC § 6110. *See* Pl's. Opp'n at 8. However, there is no principled reason to apply the work product doctrine differently under section 6110. In fact, as defendant notes, it would defy logic to interpret section 6110 in a vacuum, without reference to the substantial body of FOIA precedent that has developed to give meaning to its provisions. *See* Def's. Reply at 5. This is not to say that all CCA are protected in full by the attorney work product doctrine. The function of each

10

document and the context in which it was prepared must be analyzed on a case-by-case basis.  *See Delaney*, 826 F.2d at 127; *Coastal States,* 617 F.2d at 858 (noting that "an understanding of the function the documents serve within the agency is crucial").  Moreover, as this Court has previously held, the responding agency must also evaluate each withheld document for reasonably segregable non-exempt material.  *See, e.g., Judicial Watch v. United States Dep't of Justice*, 337 F. Supp. 2d 183, 185 (D.D.C. 2004) (Sullivan, J.) (holding that the "segregability requirement ... does not carve out an exception for documents withheld pursuant to certain privileges").  However, there is nothing in FOIA's segregability requirement that carves out agency working law from otherwise exempt material.  *See Tax Analysts*, 294 F.3d at 76.  If the portions of the CCA described by plaintiffs as "agency working law" were prepared in anticipation of litigation and meet the criteria established in *Hickman* and its progeny, then they are properly covered by the attorney work product doctrine and exempt from disclosure pursuant to the FOIA, as incorporated by 26 U.S.C. § 6110(i)(3).[7]

### C.   **Evaluation of Claimed Work Product in this Case**

---

[7] Note, however, that the Service's decisions to delete material from CCA in accordance with FOIA subsections (b) and (c) are discretionary, not mandatory.  *See* 26 U.S.C. § 6110(i)(3)(B) (noting that the Secretary *may* make deletions of material in accordance with FOIA).  Thus, defendant's redactions of CCA in this case are by no means mandated by the *Guidance* case nor by any other legal precedent.

As mentioned above, defendant withheld each of the CCA at issue in this case after determining that "no portion of any of these documents can be reasonably segregated for disclosure." Tate Decl. ¶ 4.  Essentially, the IRS claims that the CCA are exempt from disclosure in their entirety because they consist entirely of attorney work product.  Defendant points to yet another Tax Analysts case, in which the D.C. Circuit held that "*any part* of [IRS Field Service advice memoranda] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5."  *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997) (emphasis added). Defendant also cites *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987), *Winterstein v. United States Dep't of Justice*, 89 F. Supp. 2d 79, 81 (D.D.C. 2001), and *Rockwell Int'l Corp. v. United States Dep't of Justice*, 235 F.3d 598, 604-05 (D.C. Cir. 2001), as examples of cases in which documents held to constitute attorney work product material were permitted to be withheld in their entirety.  *See* Def's. Reply at 7 n.8.[8]

---

[8] Indeed, this Court has previously observed that "the scope of the work-product privilege is broad, and often shields a whole document from opposing counsel's discovery requests." *Judicial Watch*, 337 F. Supp. 2d at 185 (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)).  As noted in *Judicial Watch*, and as evident in this case, the "wide-reaching protection for attorney work-product" is often in tension with FOIA's broad disclosure

Defendant describes the documents at issue in this case, and its rationale for withholding them in full, through a declaration by Sarah Tate, an attorney in the Disclosure and Privacy Law division of OCC that was assigned to review the documents and respond to plaintiff's requests.  Tate's declaration states that

> [e]ach CCA contains a statement of facts deemed by the author to be pertinent to the specific issue addressed in the CCA, the author's analysis, recommendations and strategic assessment of the issue raised, and the author's views as to how the Service should litigate the issue raised.  The information included in each CCA's statement of facts was selected from the total collection of information known to the IRS with respect to the subject taxpayer; the statements consist of those facts identified by the author of each CCA as pertinent to the issue addressed in the CCA.  Disclosure of these statements of selected facts would reveal aspects of the Service's litigating strategy, and would reveal the thought processes of the attorneys participating in the preparation of the pending litigation.  The analysis, recommendations and strategic assessment contained in each CCA presents the national office attorney's views and suggestions as to how the Service should proceed with respect to the issues addressed in the context of the particular facts of each litigation.  Each CCA at issue was written by one Office of Chief Counsel attorney for the benefit of another Chief Counsel attorney responsible for protecting the government's interests in litigation.  Each CCA was written, in its entirety, in the context of litigation and addresses an issue arising in that litigation.  Disclosure of the CCA, in whole or in part, would reveal the Service's litigating strategy as well as the thought processes of the attorneys participating in the preparation of the Service's strategies and positions in the litigation.

Tate Decl. ¶ 4.[9]

---

and segregability requirements.  *See id.*

[9]  The Tate Declaration also describes each individual CCA in further detail.  *See* Tate Decl. ¶ 3.

13

After reviewing complete copies of the CCA provided for the Court's *in camera* inspection, the Court finds that they are accurately described by the Tate Declaration and that defendant has sufficiently justified its conclusion that no reasonably segregable materials can be separated from protected attorney work product.  Accordingly, the Court finds that defendant was authorized to withhold each CCA in full pursuant to 26 U.S.C. § 6110(i)(3)(B).

There is a strong theme in this Circuit's FOIA case law that "an agency will not be permitted to develop a body of 'secret law' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege ...." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir.1980). However, the CCA in this case present an especially strong case for application of the work product doctrine -- not only was each prepared in anticipation of litigation, but each actually pertains to cases already docketed in Tax Court.  The need for disclosure of agency working law in these docketed case CCA is considerably less compelling than in the typical case.  In *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132 (1975), the Supreme Court held that "the public's interest in disclosure" of NLRB memoranda regarding decisions to commence litigation was "substantially reduced

by the fact ... that the basis for the General Counsel's legal decision will come out in the course of litigation before the Board; and that the 'law' with respect to these cases will ultimately be made not by the General Counsel but by the Board or the courts." *Id.* at 160.  Similarly here, the Chief Counsel's legal decisions with respect to these docketed case CCA will come out in litigation, and the "law" will ultimately be made not by OCC, but by the Tax Court. Therefore, defendant's decision to withhold these documents does not risk the development of secret agency law and does not offend the purposes of FOIA.

**D.    Requests for "Check Sheets" and "Harm Memos"**

26 U.S.C. § 6103 requires officers or employees of the United States to maintain the confidentiality of tax returns and "return information" regarding specific taxpayers.[10] Defendant contends that the taxpayer identifying information redacted from the check sheets and harm memos constitutes

---

[10] "Return information" means –

  a  taxpayer's identity, the nature, source, or amount of his
  income, payments, receipts, deductions, exemptions, credits,
  assets, liabilities, ... or any other data, received by,
  recorded by, prepared by, furnished to, or collected by the
  Secretary with respect to a return ... but such term does
  not include data in a form which cannot be associated with,
  or otherwise identify, directly or indirectly, a particular
  taxpayer ...

26 U.S.C. § 6103(b)(2).

15

"return information" as defined by section 6103 and therefore may not be disclosed.[11]  *See* Def's. Mem. at 32. Plaintiff, on the other hand, argues that any confidentiality enjoyed by the taxpayers in this case has been "dissolved" by their knowing and voluntary decision to litigate their tax liabilities on the public record in Tax Court.  *See* Pl's. Opp'n at 31 (citing *Cottone v. Reno*, 193 F.2d 550, 554 (D.C. Cir. 1999) ("Under our public domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a public record.")).

Plaintiff's public domain argument misses the mark. The definition of protected "return information" in section 6103 is extremely broad, and includes not only a taxpayer's *identity*, but also numerous other categories of information that may be connected to the taxpayer's identity.  *See* note 10, *supra*.  The context of plaintiff's request must be considered.  If defendant were to release unredacted

---

[11] In contrast to CCA, the "check sheets" and "harm memos" are not "written determinations" or "background file documents" as defined by § 6110(b).  Thus, their availability is *directly* controlled by FOIA rather than through FOIA *as incorporated by* section 6110.  Defendant claims FOIA Exemption 3 (5 U.S.C. § 552(b)(3)) (covering material that is "specifically exempted" by other statutes), acting in combination with 26 U.S.C. § 6103(a), to justify its redaction of the portions of check sheets and harm memos constituting "return information" within the meaning of section 6103.

versions of the check sheets and harm memos, it would reveal not only the taxpayers' identities but also the fact that these taxpayers' cases have been the subject of further investigation and analysis in the form of CCA.  This fact has not been made public by the taxpayers' pending Tax Court cases and seems to be precisely the type of information Congress intended to protect by defining "return information" broadly to include "any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence of liability."  *See* 26 U.S.C. § 6103(b)(2).  As noted in *Cottone*, "we must be confident that the information sought is truly public and that the requester receive no more than what is publicly available before we find a waiver."  193 F.3d at 555.  Accordingly, the simple fact that the taxpayers in this case have chosen to litigate their cases in Tax Court is not enough to dissolve section 6103's protection of other information about their returns, including the fact that their cases have been selected by OCC for further investigation in the form of CCA.

### III. CONCLUSION

Because the Court is persuaded that OCC properly exercised its discretion to withhold the documents at issue

in this case, the Court will **GRANT** defendant's motion for summary judgment, **DENY** plaintiff's cross-motion for summary judgment, and **DISMISS** plaintiff's complaint with prejudice. This holding is necessarily a narrow one and applies only to the documents in this case. The IRS remains under a blanket obligation to individually evaluate each "written determination" and background file document it prepares pursuant to 26 U.S.C. § 6110, and must make each available for public inspection unless a specific exemption from disclosure applies.

A separate Order and Judgment accompanies this Memorandum Opinion.


**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            September 26, 2005**